IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| **HANS CONKEL,** | 3:19-cv-01113-BR |
|     Plaintiff, | OPINION AND ORDER |
| v. | |
| **THE REED INSTITUTE dba REED COLLEGE,** | |
|     Defendant. | |

**SCOTT H. HUNT**
Busse & Hunt
621 S.W. Morrison St., Suite 521
Portland, OR  97205
(503) 248-0504

    Attorneys for Plaintiff

**PAULA A. BARRAN**
**SHAYDA Z. LE**
Barran Liebman LLP
601 S. W. Second Ave., Suite 2300
Portland, OR  97204
(503) 228-0500

    Attorneys for Defendant

**BROWN, Senior Judge.**

    This matter comes before the Court on the Motion (#7) to Dismiss and Motion for A More Definite Statement filed by

1 – OPINION AND ORDER

Defendant The Reed Institute dba Reed College.  The Court concludes the record is sufficiently developed, and, therefore, oral argument is not required to resolve this Motion.

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion as indicated below.

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint (#3), and the Court accepts them as true for purposes of this Motion.

Plaintiff Hans Conkel was employed by Defendant as a locksmith on Defendant's campus.  Plaintiff is a Christian and openly shares his faith with others at Reed College.  Plaintiff came into regular contact with students during the course of his duties and became aware of "practices and conduct" by Defendant and its students that Plaintiff believed were violations of the law.  Specifically, Plaintiff references sexual assaults of students and cover-up efforts by Defendant's administration, unlawful drug use by students and/or employees; employee thefts, racial and religious discrimination against employees, performance of electrical work by unlicensed employees, and discrimination against students with disabilities.  Plaintiff

reported the alleged illegal conduct to Defendant's administration.

According to Plaintiff, after he reported these matters Defendant retaliated against him by placing restrictions on him that prevented him from interacting with students on and off campus.  Plaintiff, however, continued to be approached by current and former students who sought his help.  Plaintiff alleges Defendant objected to Plaintiff sharing his religious beliefs with others and that Defendant intended to prevent Plaintiff from living in accordance with his religious beliefs. In any event, Plaintiff continued to report illegal activities to Defendant.  Plaintiff alleges in Fall 2017 he was disciplined for making these reports.

On August 22, 2018, Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries (BOLI) alleging employment discrimination based on his religion and retaliation for having reported the illegal conduct.

On August 23, 2018, Plaintiff asked Lorraine Arvin, Defendant's Vice President, to arrange a meeting with Defendant's president so Plaintiff could report a student who had been sexually assaulted and was being pressured by school

officials to drop her complaint. Arvin denied Plaintiff's request.

On August 27, 2018, Defendant terminated Plaintiff's employment.

On September 5, 2019, Plaintiff filed a Complaint in this Court against Defendant. Plaintiff alleges the following claims:

> (1) retaliation in violation of Oregon Revised Statutes § 659A.199 for reporting a violation of law;
>
> (2) retaliation in violation of Oregon Revised Statutes § 659A.030(1)(f) for filing a complaint with BOLI;
>
> (3) religious discrimination in violation of 42 U.S.C. § 2000e-2(a);
>
> (4) religious discrimination in violation of Oregon Revised Statute § 659A.030; and
>
> (5) intentional infliction of severe emotional distress (IIED).

On September 27, 2019, Defendant filed a Motion to Dismiss and to Make More Definite and Certain.

## STANDARDS

I. Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546). When a complaint is based on facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure

8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Federal Rule of Civil Procedure 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)).

**II. Motion for More Definite Statement**

Federal Rule of Civil Procedure 12(e) provides "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." The court may, in the exercise of its discretion, require a more definite statement when the complaint is so

ambiguous that the defendant cannot ascertain the nature of the claim or claims being asserted.  See *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999).

"Motions for a more definite statement[, however,] are viewed with disfavor and are rarely granted."  *Holdner v. Coba*, No. 09-cv-00979, 2010 WL 678112, at *1 (D. Or. Feb. 25, 2010)(citing *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999).  As one court observed, "Rule 12(e) motions attack the intelligibility of the complaint, not the lack of detail, and are properly denied where the complaint notifies the defendant of the substance of the claims asserted." *Id.* (citing *Presido Group, LLC v. GMAC Mortg., LLC,* No. 08-5298, 2008 WL 3992765, at *1 (W.D. Wash, Aug. 25, 2008)(citations omitted)).  Thus, when evaluating a motion under Rule 12(e), the proper test is to determine "whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings."  *Id.* (citing *Federal Sav. and Loan Ins. Corp. v. Musacchio,* 695 F. Supp. 1053, 1060 (N.D. Cal. 1988)).

## **DISCUSSION**

**I.   Defendant's Motion to Dismiss Plaintiff's IIED Claim.**

Defendant contends Plaintiff has not pleaded sufficient

facts to support an IIED claim, and, therefore, the Court should dismiss the claim.

   A.   **Standards**

   To establish a claim for intentional infliction of emotional distress under Oregon law the plaintiff must establish the following elements:

>   (1) the defendant intended to inflict severe emotional distress on the plaintiff;
>   (2) defendant's acts were the cause of plaintiff's severe emotional distress; and (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

*Dawson v. Entek Int'l*, 630 F.3d 928, 941 (9th Cir. 2011). "Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law." *Harris v. Pameco Corp.*, 170 Or. App. 164, 171 (2000). This determination is made on a case-by-case basis after considering the totality of the circumstances. *Delaney v. Clifton*, 180 Or. App. 119, 130 (2002).

   "It is the defendant's acts, rather than [the defendant's] motives, that must be outrageous." *Rush v. Or. Steel Mills*, No. 06-1701-AS, 2007 WL 2417386, at *3 (D. Or. Aug. 17, 2007)(citing *Madani v. Kendall Ford, Inc.*, 312 Or. 198, 204 (1991)). The conduct must be "so outrageous in character, and

so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *House v. Hicks*, 218 Or. App. 348, 358 (2008)(quoting *Restatement (Second) of Torts § 46* comment d). Insults, harsh or intimidating words, and rude behavior do not ordinarily result in liability. *Lewis v. Or. Beauty Supply Co.*, 302 Or. 616, 628 (1987). Employer conduct that is "rude, boorish, tyrannical, churlish, and mean" is similarly not actionable. *Bourgo v. Canby Sch. Dist.*, 167 F. Supp. 2d 1173, 1184 (D. Or. 2001)(citing *MacCrone v. Edwards Ctr., Inc.*, 160 Or. App. 91, 100 (1999)). An employer-employee relationship, however, "imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse." *House*, 218 Or. App. at 360 (quoting *McGanty v. Staudenraus*, 321 Or. 532, 547-48 (1995)). Nevertheless, Oregon courts are reluctant to impose IIED liability on employers. *Madani v. Kendall Ford Co.*, 312 Or. 198, 205-06 (1991), *abrogated on other grounds by McGanty*, 321 Or. 532 (1995).

   B.   **Analysis**

Plaintiff alleges the way Defendant treated him (a) was designed to inflict severe emotional distress and/or

(b) was done with the knowledge that it was substantially certain to cause Plaintiff emotional distress. Plaintiff alleges Defendant's treatment included

> yelling, berating and/or belittling Plaintiff for helping students and/or former students; verbally attacking Plaintiff for trying to help students or former students in need of help on his own time; restricting him from communicating with students, and/or former students, even if the other individual initiated the contact; and, in general, isolating Plaintiff from others, including co-workers, to the point of ostracizing him.

As noted, when considering whether a defendant's acts were an "extraordinary transgression," a court must examine the purpose of the conduct and the means used to achieve the result. *Shay v. Paulson*, 131 Or. App. 270, 273 (1994). *See also Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214, 1230 (D. Or. 2016). The conduct must be deliberate, and the means of inflicting the harm must be extraordinary. *Austin*, 205 F. Supp. 3d at 1230. For example, in *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or. App. 234, 237 (1992), the defendant directed plaintiffs to hold hands with two of their co-workers, demanded the plaintiffs surrender their keys, paced tensely in front of the plaintiffs with clenched hands, accused the plaintiffs of being liars and saboteurs, terminated the plaintiffs' employment, refused to explain the defendant's conduct, and rashly ordered the

plaintiffs to leave the premises. The court found this conduct did not rise to the level of socially intolerable conduct sufficient for an IIED claim and stated: "Socially intolerable conduct is conduct that is 'outrageous in the extreme.'" *Patton v. J.C. Penney Co.*, 301 Or. 117, 124 (1986).

In *Clemente v. State*, 227 Or. App. 434 (2009), the court held even if the plaintiff, as an employee, was "subjected to an insensitive, mean-spirited supervisor who might have engaged in gender-based, discriminatory treatment," those facts were not sufficiently aggravating to state a *prima facie* case for IIED, especially in the absence of evidence that the employee was "verbally, sexually, or physically abused or harassed"; "exposed to violence"; or "repeatedly and viciously ridiculed." *Id.* at 443.

In every case in which the Oregon appellate courts have allowed an emotional-distress employment claim to proceed to a jury, the employer engaged in conduct that was more than aggravating, insensitive, petty, irritating, perhaps unlawful, or mean. In some cases the employer engaged in or threatened to engage in unwanted physical contact of a sexual or violent nature (*see Lathrope-Olson v. Dep't of Transp.*, 128 Or. App. 405 (1994)(threatening to push the plaintiff into the path of

11 - OPINION AND ORDER

oncoming vehicles)); used derogatory racial, gender, or ethnic slurs usually accompanied by some other aggravating circumstance (see *Whelan v. Albertson's, Inc.*, 129 Or. App. 501 (1994) (manager repeatedly referred to the plaintiff as a "queer" and imitated his allegedly effeminate characteristics)); exposed the plaintiff to actual physical danger (see *Babick* v. *Oregon Arena Corp.*, 333 Or. 401 (2002)(released intoxicated and violent concert-goers who had been detained by the plaintiffs)); repeatedly subjected the plaintiff to verbal abuse, forced her to do work from which she was medically exempted, and forced her to engage in illegal conduct (see *Schoen v. Freightliner LLC*, 224 Or. App. 613 (2008)(called the plaintiff "worthless" almost daily, assigned work that exceeded her medical limitations, and ordered the plaintiff to collect illegal "football pool" bets)); or involved acts of psychological and physical intimidation, racism, or sexual harassment (see *Kraemer v. Harding*, 159 Or. App. 90 (1999)(continuing accusations that a school bus driver was a child sex-abuser after multiple investigations concluded there had not been any inappropriate conduct)). *See also Wheeler v. Marathon Printing, Inc.*, 157 Or. App. 290 (1998)(co-worker continued "sadistic" harassment including sexual intimidation and insults even after the plaintiff attempted

suicide); *Mains v. II Morrow, Inc.*, 128 Or. App. 625 (1994)(daily physical assaults and sexual comments by supervisor); *Franklin v. Portland Comty. Coll.*, 100 Or. App. 465 (1990)(supervisor called an African-American male by the name "boy," issued false reprimands, shoved him, locked him in an office, suggested he apply elsewhere for employment, and otherwise subjected the plaintiff to "verbal and physical abuse").

Even taking Plaintiff's allegations in this case to be true, the Court cannot conclude as a matter of law that the allegations plausibly support a claim for intentional infliction of emotional distress because Plaintiff does not allege the means used by Defendant were beyond the bounds of socially tolerable behavior and Plaintiff's allegations do not rise to the level of "outrageous in the extreme."

On this record the Court concludes Plaintiff has failed to allege a plausible claim for intentional infliction of emotional distress. Accordingly, the Court dismisses Plaintiff's Fifth Claim, but grants Plaintiff leave to amend if possible.

## II. Defendant' Motion for More Definite Statement regarding Plaintiff's Retaliation and Religious Discrimination Claims.

Defendant contends Plaintiff's First and Second Claims for Retaliation and Third and Fourth Claims for Religious Discrimination should be made more definite and certain. Defendant argues these claims contain only conclusory allegations and Plaintiff must provide more sufficient factual allegations for Defendant to be able to respond. Defendant also contends the basis for Plaintiff's religious discrimination claims is unclear and should be made more definite and certain as to whether the claims are based on disparate treatment or failure to accommodate.

### A. Retaliation Claims

Defendant contends Plaintiff's claims for retaliation are conclusory, vague, and lack sufficient factual information to allow Defendant to respond. Specifically, Defendant asserts Plaintiff must identify who he made his reports to and when the reports were made.

As noted, however, Rule 12(e) motions attack the intelligibility of a complaint rather than the lack of detail. *See Williamson v. Munsen Paving*, No. 09-cv-736, 2009 WL 4505443, at *5 (D. Or. 2009). Here Plaintiff alleges he was terminated

14 – OPINION AND ORDER

in retaliation for making reports of illegal conduct to Defendant and in retaliation for filing a claim with BOLI. These allegations are not vague nor uncertain, and, therefore, they do not prevent Defendant from ascertaining the nature of Plaintiff's claim. Moreover, the additional facts sought by Defendant are evidentiary and can be obtained through discovery.

The Court concludes Plaintiff's First and Second Claims for Retaliation are sufficiently pled, and, therefore, the Court denies Defendant's Motion for a More Definite Statement as to these claims.

    B.    **Religious Discrimination Claims**

Defendant contends it is unclear whether Plaintiff's religious discrimination claims are based on disparate treatment or based on a failure to accommodate.

Under a disparate-treatment theory an employee must allege (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside of his protected class were treated more favorably, giving rise to an inference of discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). To establish a religious discrimination claim based on a failure-

to-accommodate theory, an employee must establish (1) he had a *bona fide* religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and the conflict; and (3) the employer discharged, threatened, or otherwise subjected the employee to an adverse employment action because of his inability to fulfill a job requirement. *Id.* at 606.

Defendant contends Plaintiff does not allege specific facts to support his allegations that his religious beliefs were a motivating factor for his termination, that he informed Defendant the restrictions imposed by Defendant conflicted with his religious beliefs, or that Defendant denied his request for an accommodation based on his beliefs.

Plaintiff alleges he is a Christian who openly shared his faith with "members of Defendant's community who initially expressed interest," Defendant was aware of his faith, and Defendant "objected to Plaintiff sharing his faith with students and/or living by its principles within Defendant's community, such as acting morally." Plaintiff also alleges the "restrictions imposed on Plaintiff's interactions . . . had the intent and/or consequence of preventing Plaintiff from living out the sincerely-held tenants of his faith," that these

restrictions "discriminated against him with respect to terms and conditions of his employment on the basis of his religion," and that Defendant's decision to terminate him "was based in substantial part on his religion and/or practice of his religion."

Plaintiff clearly alleges his termination was based on his religious beliefs, but he does not state he was treated differently than others or that he was denied an accommodation based on his religious beliefs.

On this record the Court concludes Plaintiff's claim for religious discrimination is sufficiently ambiguous to cause Defendant to be unable to ascertain the nature of the claim being asserted. Accordingly, the Court grants Defendant's Motion for a More Definite Statement as to Plaintiff's Third and Fourth Claims for Religious Discrimination.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motions as follows: (1) **GRANTS** Defendant's Motion to Dismiss Plaintiff's Fifth Claim for Intentional Infliction of Emotional Distress, dismisses that claim without prejudice, and grants Plaintiff leave to replead; (2) **DENIES**

17 - OPINION AND ORDER

Defendant's Motion for More Definite Statement as to Plaintiff's First and Second Claims for Retaliation; and (3) **GRANTS** Defendant's Motion for More Definite Statement as to Plaintiff's Third and Fourth Claims for Religious Discrimination and grants Plaintiff leave to replead.

The Court **GRANTS** Plaintiff leave to file a Second Amended Complaint consistent with this Order **no later than December 20, 2019.**

IT IS SO ORDERED.

DATED this 26th day of November, 2019.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge